IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORPORATE SAFE SPECIALISTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 3421 |
| | ) | |
| TIDEL TECHNOLOGIES, INC., and TIDEL ENGINEERING, LP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Corporate Safe Specialists, Inc. (CSS) brought this action against defendants Tidel Engineering, L.P., and its parent company, Tidel Technologies, Inc., for infringing U.S. Patent No. 6,885,281 B2 ('281 patent). Now before the court are two motions, one filed by each defendant. Tidel Engineering moves to transfer this action to the Eastern District of Texas, where defendants filed a declaratory judgment action, as well as claims for tortious interference against CSS, or, in the alternative, moves for a stay. Tidel Technologies moves to be dismissed from the action for lack of personal jurisdiction and improper venue, or, in the alternative, to join in Tidel Engineering's motion to transfer. The parties briefed both motions on an expedited basis due to pending matters, including an emergency motion for injunctive relief, before the federal district court of the Eastern District of Texas. We reserve judgment on Tidel Engineering's motion until after we hold a conference with the parties. Tidel Technologies' motion is granted.

## BACKGROUND

Unlike Federal Rule of Civil Procedure 12(b)(6) motions to dismiss, when ruling on a

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 2 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 2 of 10    PageID 741
No. 05 C 3421                                                                                                    Page 2

motion to dismiss for lack of personal jurisdiction, the court may look beyond the facts alleged in the complaint and consider affidavits and other written materials submitted by the parties. Edelson v. Dh'ien, 352 F.Supp.2d 861, 869 n.4 (N.D.Ill. 2005). Thus, the following facts come from both the complaint and exhibits attached to the parties' briefs, all of which are considered in the light most favorable to the plaintiff. Jacobs/Kahan & C. v. Marsh, 740 F.2d 587, 589 (7th Cir. 1984). CSS, an Illinois corporation headquartered in Posen, Illinois, manufactures and sells safes and cash management systems to retailers who deal in large volumes of cash. CSS president, Edward McGunn, along with three CSS employees, developed an invention that received a patent on April 26, 2005. The inventors assigned the patent, U.S Patent No. 6,885,281 B2 ('281 patent), entitled "Method and Apparatus for Controlling a Safe Having an Electric Lock," to CSS.

Tidel Engineering is a Delaware limited partnership headquartered in Carrollton, Texas, and Tidel Technologies is a Delaware corporation headquartered in Houston, Texas. The parties dispute the scope of Tidel Technologies' activities – an issue addressed below – but it is clear that the company owns two subsidiaries that own Tidel Engineering. Tidel Engineering manufactures and sells the SENTINEL Cash Management System, which CSS alleges infringes one or more claims of its '281 patent.

Before receiving the patent, CSS sent Tidel Technologies and Tidel Engineering a letter dated April 7, 2005, reminding them of CSS' ownership of U.S. Patent No. 6,724,303 ('303 patent) for a "Method and Apparatus for Monitoring a Safe," and informing them of the impending issuance of the '281 patent. On May 23, 2005, CSS sent defendants another letter in which they enclosed a copy of the '281 patent and asked them to explain why the SENTINEL cash management products are not infringing. After receiving no response to its

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 3 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 3 of 10    PageID 742
No. 05 C 3421                                                                                    Page 3

letters, CSS sent a cease-and-desist letter dated June 2, 2005. Defendants responded to CSS the next day, requesting that plaintiff identify the claims of the patents it believed they were infringing. Though a dialogue began between the two sides, CSS believed defendants' response insufficient and filed its infringement action in this district on June 9, 2005.

Tidel Technologies and Tidel Engineering followed suit by filing an action against CSS in the Eastern District of Texas five days later. Tidel Technologies and Tidel Engineering seek a declaratory judgment that CSS' '281 patent and/or '303 patent are invalid, not infringed, or unenforceable. In May and June 2005, when this dispute arose, Tidel Technologies was attempting to sell its cash security business, which is at the center of CSS' infringement allegations. This led Tidel Technologies and Tidel Engineering to file an amended complaint on June 17, 2005, adding claims for tortious interference with a prospective business relationship, tortious interference with existing contracts, and abuse of process.

## DISCUSSION

We begin our analysis with Tidel Technologies' motion to dismiss for lack of personal jurisdiction. Even though this issue is procedural, it concerns the forum in which a patentee can protect its rights and, thus, we apply Federal Circuit law. *See* Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994); Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2003). When a district court rules on a motion to dismiss for lack of personal jurisdiction based only on written materials, not on evidence provided at a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. Electronics For Imaging, 340 F.3d at 1349. In weighing whether plaintiff has established a *prima facie* case, the court resolves all factual disputes in plaintiff's favor. Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation, 297 F.3d 1343, 1347 (Fed. Cir.

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 4 of 10
Case 3:05-cv-01767-K   Document 35   Filed 07/15/05   Page 4 of 10   PageID 743
No. 05 C 3421                                                                                    Page 4

2002).

A federal district court has specific personal jurisdiction over a non-resident defendant when (1) the forum state's long-arm statute permits service of process and (2) the assertion of jurisdiction comports with due process. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Illinois' long-arm statute "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 940 (7th Cir. 2000); 735 ILCS 5/2-209(c). As the Seventh Circuit has found no operative difference between the limits imposed by the Illinois Constitution and those imposed by the U.S. Constitution, and Illinois courts have not found Illinois law to prohibit the exercise of jurisdiction where the U.S. Constitution allows it, this two-pronged analysis becomes solely a due process inquiry. Hyatt International Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002).

To satisfy due process a party must have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Commisariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315 (Fed. Cir. 2005). Minimum contacts require that a defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). A court may not exercise personal jurisdiction on the basis of random, fortuitous or attenuated contacts. or due to the "unilateral activity of another party or a third person." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984). The Federal Circuit has consolidated this Supreme Court precedent into

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 5 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 5 of 10    PageID 744
No. 05 C 3421                                                                              Page 5

a three factor test for determining whether asserting personal jurisdiction complies with due process: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." 3D Systems, Inc., v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998)(citing Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995).

CSS contends that the court may exercise personal jurisdiction over Tidel Technologies for two independent reasons: (1) the company established minimum contacts in this forum by offering for sale the allegedly infringing device, the SENTINEL Cash Management System, nationally, including in Illinois, and (2) the company's structure and practices render it the alter ego of Tidel Engineering and justify attributing the subsidiary's minimum contacts to Tidel Technologies. Tidel Technologies argues that, as the owner of the companies that own Tidel Engineering, it is merely a (grand)parent holding company that neither manufactures, markets nor sells anything in Illinois or elsewhere, and therefore it does not have minimum contacts with Illinois and is not the alter ego of Tidel Engineering.

In 3D Systems, Inc., 160 F.3d at 1379-80, the Federal Circuit found that a district court did have personal jurisdiction over a defendant who sent price quotation letters for an allegedly infringing device to the forum state. Id. at 1379-80. CSS argues that, similar to the price quotation letters in 3D Systems, Tidel Technologies made offers to sell Tidel Engineering's allegedly infringing devices across the country. This argument does not meet the first element of the Federal Circuit test. In support of its assertion, CSS cites to statements in a press release, an internet news story, and one of Tidel Technologies' 10-K filings with the Securities and Exchange Commission (SEC). The press release states, "Tidel also announced

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 6 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 6 of 10    PageID 745
No. 05 C 3421                                                                                    Page 6

that it has retained the investment banking firm of Stifel, Nicolaus & Company, Inc. to sell its remaining timed-access cash controller business, as required by Tidel's November 2004 financing agreement with its lender." This statement does not evidence an offer of sale in Illinois or elsewhere, but merely announces an intention to sell through the named bank.[1] The internet news article from October 2002, does not evidence an offer to sell, either. Rather, it announced that Tidel Technologies was going to conduct public demonstrations of its new SENTINEL device at a 2002 trade show for convenience stores. CSS also highlights statements in Tidel Technologies' 10-K form for fiscal year 2002, which indicate that it engages in the development, manufacture, sale and support of electronic cash security systems. While the 10-K form does not always clarify that it operates through its subsidiaries, it does state under the heading, "Description of business," that "Tidel Technologies, Inc. (the 'Company') is a Delaware corporation which, through its wholly owned subsidiaries, develops, manufactures, sells and supports automated teller machines ('ATMs') and electronic cash security systems." (Tidel Technologies' Form 10-K 2002 at 41). When read together, these statements do not support the proposition that Tidel Technologies sells the SENTINEL devices. Moreover, even if the statement from the press release, Internet article or 10-K form, could be read as an offer of sale, none of them is "purposefully directed" at residents of Illinois.

CSS offers a second justification for exercising personal jurisdiction over Tidel Technologies – it is the alter ego of Tidel Engineering. CSS contends that Tidel Technologies, as Tidel Engineering's alter ego, assumes its subsidiaries' undisputed minimum contacts in

---

[1] Another CSS exhibit is the opening page of Stifel, Nicolaus & Company's executive summary of Tidel Technologies, which plainly states that Tidel Technologies "conducts all of its operations through its wholly owned subsidiary, Tidel Engineering, L.P." This exhibit seemingly contradicts CSS's contention that Tidel Technologies sells these devices.

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 7 of 10
Case 3:05-cv-01767-K   Document 35   Filed 07/15/05   Page 7 of 10   PageID 746
No. 05 C 3421                                                                                    Page 7

Illinois.  Given that the alter ego theory is not unique to patent law, the Federal Circuit applies

the law of the regional circuit.  <u>Insituform Technologies, Inc. v. CAT Contracting, Inc.</u>, 385

F.3d 1360 (Fed Cir. 2004).  Thus, for our analysis we look to Seventh Circuit precedent.  The

Seventh Circuit has affirmed that parent companies and their subsidiaries are presumed to

be separate corporate entities unless they engage in activities that render their separate

existence a fiction.  <u>Worth v. Tyer</u>, 276 F.3d 249, 260 (7th Cir. 2001); <u>Esmark, Inc. v. N.L.R.B.</u>,

887 F.2d 739, 753 (7th Cir. 1989)("[I]n general, a parent corporation may not be held to account

for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary has

been disregarded in a wide range of corporate matters."); <u>Van Dorn Co. v. Future Chem. &</u>

<u>Oil Corp.</u>, 753 F.2d 565, 569-70 (7th Cir. 1985).  *See* <u>Stenholt v. Centex Real Estate Corp.</u>, 1995

WL 535118 at *2 (N.D.Ill. 1995)(quoting 4A Wright & Miller, Federal Practice and Procedure

§ 1104) ("Separate corporate existence is presumed as to the parent-subsidiary relationship

and it is not destroyed by the fact that the parent corporation exercises certain supervision

over the employment policies and practices of the subsidiary and there is an interrelationship

of certain officers between the parent and the subsidiary.").  Based on the holding in <u>Cannon</u>

<u>Manufacturing v. Cudahy Co.</u>, 267 U.S. 333 (1925), in which the Supreme Court found that

a parent corporation was separate from its subsidiary based on its separation of finances and

transactions, courts in this circuit have enumerated a number of factors for determining

whether a parent company is the alter ego of its subsidiary for jurisdictional purposes.  *See*

<u>Graco, Inc. v. Kremlin, Inc.</u>, 558 F.Supp.188, (N.D. Ill. 1982); <u>Avery Dennison Corp. v. UCB</u>

<u>SA and UCB Films PLC</u>, 1997 WL 441313 at *1 (N.D.Ill. 1997); <u>Stenholt</u>, 1995 WL 535118 at

*3.  "Such factors include whether the parent arranges financing for and capitalization of the

subsidiary; whether separate books, tax returns and financial statements are kept; whether

Case 1:05-cv-03421   Document 35   Filed 07/15/2005   Page 8 of 10
Case 3:05-cv-01767-K   Document 35   Filed 07/15/05   Page 8 of 10   PageID 747
No. 05 C 3421                                                                                          Page 8

officers or directors are the same; whether the parent holds its subsidiary out as an agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent over the daily affairs of its subsidiary." <u>Graco</u>, 558 F.Supp. at 191.

CSS asserts that several factors evidence that Tidel Technologies has not remained sufficiently separate from Tidel Engineering.  First, the companies share two of the same officers: Mark Levenick, who is Chief Executive Officer for both companies, and Michael Hudson, who is Executive Vice-President of Tidel Technologies and Chief Operating Officer of Tidel Engineering.  Second, Tidel Technologies' filed joint 10-K forms which consolidate its financial statements with its subsidiaries.  Third, by asserting that Tidel Technologies engages in the business of electronic cash security systems, through its subsidiaries, it holds those subsidiaries out as its agents.  Fourth, Tidel Technologies guaranteed a revolving credit note for its subsidiary.  And finally, a number of statements made by Tidel Technologies identify it as the manufacturer, seller, distributor and collector of monies for the allegedly infringing device.

CSS' five factors do not establish that Tidel Technologies is the alter ego of Tidel Engineering, because many of the company's allegedly improper actions are normal features of a parent-subsidiary relationship.  As recognized in <u>Cannon Manufacturing Co.</u>, to be subject to a suit in a jurisdiction in which only the subsidiary has minimum contacts, the parent corporation must engage in more than the normal parent-subsidiary relationship. 267 U.S. at 336-37; <i>see</i> <u>Avery Dennison Corp.</u>, 1997 WL 441313 at *1 (N.D.Ill. 1997). Though Tidel Technologies shares two officers with Tidel Engineering, the parent company has six officers and directors.  The commonality of two officers between the parent and subsidiary companies does not preclude their separate existence.  <u>Continental Insurance Co. v. Loewn Group, Inc.</u>,

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 9 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 9 of 10    PageID 748
No. 05 C 3421                                                                                      Page 9

1998 WL 142380 at *10 (N.D.Ill. 1998); <u>Medco Research, Inc. v. Fujisawa Pharmaceutical Co.,</u>

<u>Ltd.</u>, 1994 WL 87453 at *4 (N.D.Ill. 1994).  Likewise, both Tidel Technologies' consolidated

10-K form, and its guarantee of Tidel Engineering's promissory note, are "normal feature[s]

of parent-subsidiary relationships." <u>Calvert v. Huckins</u>, 875 F.Supp. 674, 679 (E.D. Ca. 1995).

The Internal Revenue Service, SEC, and generally accepted accounting principles, all allow

parent companies to consolidate their financial activities with that of subsidiary companies in

their annual reports. <u>Avery Dennison Corp.</u>, 1997 WL 441313 at *3; <u>Calvert</u>, 875 F.Supp. at

678-79.  This is not evidence of comingled funds.  Nor does a parent company's guarantee of

its subsidiary's loan evidence its control over the subsidiary's finances. <u>Calvert</u>, 875 F.Supp.

at 679.  Furthermore, both the 10-K form and the guarantee emphasize the singularity of these

corporate entities.  Tidel Technologies' 10-K form contains reports of both its consolidated

financials with its subsidiaries and its own financials.  Tidel Technologies' guarantee of Tidel

Engineering's loan indicates that it is not the same as its subsidiary because it provides the

lender a distinct assurance.

    We fail to see how Tidel Technologies holds Tidel Engineering out as an agent through

its statement in the 2002 10-K Form that it is a "corporation which, through its wholly-owned

subsidiaries, develops, manufactures, sells and supports" ATMs and electronic cash security

systems.  The statement itself identifies Tidel Engineering as a subsidiary, not an agent.  CSS'

more compelling argument concerns those statements in which Tidel Technologies does not

identify Tidel Engineering as its subsidiary and instead identifies itself as the manufacturer,

seller and distributor of the products manufactured by Tidel Engineering.  Some of these

statements appear in Tidel Technologies' filings, including Leonard Carr's affidavit.  These

were no more than an attorney's mistake, writing "Tidel Technology" where he should have

Case 1:05-cv-03421    Document 35    Filed 07/15/2005    Page 10 of 10
Case 3:05-cv-01767-K    Document 35    Filed 07/15/05    Page 10 of 10    PageID 749
No. 05 C 3421                                                                    Page 10

written "Tidel Engineering." However, the statements in the 10-K Form, discussed above, do reveal a carelessness in not specifying that it is Tidel Technologies' subsidiary that controls the manufacture, sale and distribution of its cash security systems. Similarly in <u>Avery</u>, 1997 WL 441313 at *2, the plaintiff produced evidence of an advertisement and employee correspondence that conflated the defendant parent company and its subsidiary. Nonetheless, in both <u>Avery</u> and in the instant case, these inexact statements are insufficient evidence to establish that the parent company acted as the alter ego of its subsidiary. Tidel Technologies is dismissed for lack of personal jurisdiction. We reserve judgment on Tidel Engineering's motion to transfer until after we have met with the parties. To that end, we ask that the parties appear for a status hearing on Monday, July 25, 2005, at 10 o'clock a.m.

### CONCLUSION

For the foregoing reasons, Tidel Technologies' motion to dismiss for lack of personal jurisdiction is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

_July 15_ , 2005.